E. G. CUTHBERTSON, GEORGE W. BOWEN and B. I. SALINGER,
Appellants, v. FIRST NATIONAL BANK OF CARROLL, Iowa,
and I. W. FOWLER, Receiver.

**Absolute deed as a mortgage:** AMOUNT SECURED: EVIDENCE. In this
1 action to have a deed declared a mortgage securing a certain sum
   and no more, the evidence is reviewed and it is *held;* that the de-
   fendant bank held the deed to the land as security for the payment
   by it of certain judgments against plaintiff, as well as other in-
   debtedness evidenced by certain notes, and that the bank had not
   been reimbursed, although the judgments were apparently dis-
   charged of record; the discharge having been for the purpose of

allowing plaintiff to make a loan on the land, and not as evidence of payment in fact.

Negotiable instruments: consideration. Where notes were given for a debt then due, an agreement that they should also cover a prior and distinct indebtedness was invalid, because without consideration.

*Appeal from Carroll District Court.*—Hon. F. M. Powers, Judge.

Saturday, December 14, 1912.

The facts are stated in the opinion.—*Affirmed.*

*B. I. Salinger* and *L. H. Salinger,* for appellants.

*Lee & Robb,* for appellees.

Sherwin, J.—This action was brought in equity to have a deed declared a mortgage securing a certain amount and no more. The plaintiffs allege that they are the owners of certain lands, the title to which stands in the name of the defendant bank. The plaintiff E. G. Cuthbertson is the wife of D. W. Cuthbertson, and petition further alleged:

That for many years immediately preceding the 4th day of January, 1908, there was a long course of dealings between said bank and the plaintiff and her husband. Said dealings included deposits made by plaintiff and her husband in said bank and loans made by the bank to them. In the course of such dealings, the bank purchased for this plaintiff and her husband certain judgments rendered against them in this court, which judgments were liens upon the land in controversy here; the purchase of such judgments being, with the exception hereafter to be stated, done by taking an assignment of such judgments to said bank or to its said president for it; that the price paid for purchasing such judgments was at times paid by the said deposits of plaintiff and her husband, and at other times by loans made to

plaintiff and her husband by said bank; that, the method of purchase to the contrary notwithstanding, the said judgments, with the exception hereafter to be stated, were in truth and in fact bought as a method of satisfying the same; and that the purchase price paid for such judgments was either paid for by said deposits or became the debt of plaintiff and her husband to said bank, and that the lien of said respective judgments, with the exceptions stated, was thus extinguished.

It was further alleged that among the judgments rendered against said plaintiff and her husband was one in favor of the Rochester Loan & Banking Company. That a sale of the land in controversy was had thereunder, and that the land was bid in by one Graham for the sum of $2,882.69 under an agreement between the defendant bank, the plaintiff and her husband, and Graham that the bank should furnish the money for such purchase as an advancement to the plaintiff and her husband, and that Graham should bid in the land, take a sheriff's deed thereto, and thereafter deed the same to the bank, which agreement was carried out.

Plaintiffs further alleged in their petition as follows:

The said sheriff's deed was given and taken and said deed from Graham to said bank was given and taken under an oral agreement between plaintiff and her husband and said bank and Graham that said deeds and each of them should operate only as security for what plaintiff and her husband were then or thereafter to be indebted to said bank, and neither of said deeds was given or taken with intent to divest plaintiff of title in said realty; and, with reference to the making of each deed referred to in this substituted petition, it was orally agreed by and between plaintiff and her husband, said bank, and whosoever was grantor or grantee in any of said deeds, that each and all of said deeds should in no wise operate to divest the title of this plaintiff in said realty, and that said deeds and each of them should operate only to secure to said bank whatever was or might be owing it by plaintiff and her husband. That on or about December 27, 1907, the said bank claimed that plaintiff and her husband were indebted to it in some $15,000 as a general

balance due above deposits made by plaintiff and her husband; said sum including all advances theretofore made by said bank for plaintiff and her husband, including what had been paid to obtain the said assignments of said judgments, and the sum furnished to Graham wherewith to pay for his said bid, and including the interest due for carrying such advances. At this time there was outstanding upon said land a mortgage to one G. W. Wattles, amounting to some $15,000, which said mortgage it became necessary to pay. Whereupon said bank, through said Culbertson, stated to plaintiff and her husband that the bank desired to avoid the appearance of being a borrower, and wished the said mortgage to be paid by a new loan, made in the name of some one other than said bank. At the same time the said Culbertson asked of plaintiff and her husband to increase said loan by approximately $5,000, which excess should be used by the bank to meet pressing obligations, and which excess should be credited on whatsoever was owing the bank on account of the said advances. The said Culbertson also stated to plaintiff and her husband that, if plaintiff retook title for the purpose of making said renewal loan, it might jeopardize the security given the bank by the conveyance to it from Graham. Thereupon, at the solicitation of said Culbertson, plaintiff permitted one William Cuthbertson, her son, to take the deed from said bank and to place a mortgage upon said land while apparent title was in him in an amount sufficient to pay the Wattles mortgage, and approximately $5,000. On the day the transfer so consented to was made to William Cuthbertson, to wit, December 27, 1907, the said William Cuthbertson and wife made two mortgages aggregating $20,000 to said Wattles. And, on the same day still, the said William Cuthbertson and his wife deeded back to said bank the land in controversy herein, and said excess or addition to the said $15,000 mortgage was delivered to said bank to be a credit on said account of plaintiff and her husband. That on the 4th day of January, 1908, there was a complete oral settlement of all matters then outstanding between the defendant bank and plaintiff and her husband, in pursuance of which settlement the plaintiff and her husband delivered to said bank their certain promissory notes for $15,000, more particularly described in the prayer herein, in full satisfaction of all matters between them, which said notes were accepted by said bank in full satisfaction and

payment of any and all debts then claimed to be due said bank from plaintiff or her husband. That, as a part of said settlement, it was orally agreed that the deed from William Cuthbertson and wife aforesaid should stand as security for the payment of said agreed balance due of $15,000, and that plaintiff avers that the said notes represented, and do represent, all due from plaintiff or her husband, or either of them, to said bank.

The plaintiffs prayed that the deed in question be declared a mortgage to secure the $15,000 represented by the notes of January 1, 1908, and that the bank be compelled to satisfy of record all judgments held by it which are liens upon the premises. In its answer and cross-petition the defendant admitted that E. G. Cuthbertson and her husband, D. W. Cuthbertson, were the owners of the land in controversy prior to March 16, 1903, and that it was conveyed by Graham to the bank as security to said bank for whatever sum the plaintiff E. G. Cuthbertson and her husband were then, or might thereafter become, indebted to said bank. It was alleged that the sale of the land to Graham, under the judgment in favor of the Rochester Loan & Banking Company, was subject to other existing prior liens on said land, and that, after the bank acquired the title thereto, it was compelled, in order to protect its security, to purchase the judgments which were prior liens on the land. The defendant further alleged that the land was to be held as security for the sums so paid in addition to the sum of $15,000 represented by the notes of January 1, 1908. The bank further alleged that to protect its security it was compelled to pay interest on a prior mortgage on the land, and also taxes thereon. The alleged settlement was denied. On the issues thus joined, the case was tried to a referee, who reported his findings of fact and conclusion of law to the district court, where they were approved; the court finding that the Cuthbertsons were indebted to the bank in the sum of $43,049.99, including interest to January 1, 1909. This

amount included all sums due the bank. The plaintiffs appeal. There is no question as to the amount due the bank on the five $3,000 notes executed to the bank on January 1, 1908, nor as to the amount due it for the advancement of $2,882.69, to enable Graham to buy in the land at the sale under the Rochester Loan & Banking Company judgment. No serious question is made as to the sum due the bank for interest paid on the Wattles mortgage of $20,000, which was prior to the mortgage deed held by the bank, nor as to the amount of taxes paid by the bank to protect its security.

The real controversy in this case centers around two fact questions: First, did the bank furnish the money to

1. ABSOLUTE DEED AS A MORTGAGE: amount secured: evidence.

procure assignments of the judgments in question? and, second, if it did, was there a satisfaction of the bank's claim therefor on the 1st of January, 1908, when the five $3,000 notes were given to the bank? The last of these two propositions is the more serious one of the two. The dates of these several transactions are material, and, at the risk of repetition, we set them out together. The judgments involved in this controversy, with two exceptions, were rendered in 1898, and assignments thereof were made to the bank or to W. L. Culbertson on dates ranging from April 22, 1899, to January 31, 1903. Of the other judgments, one was rendered in June, 1899, and the other in December, 1907, and one was assigned to the bank in 1902, and the other one was first assigned to W. L. Culbertson and later to the bank by his executrix. The title to the land was taken by Graham and by the bank from him in 1903. As we understand the record, the original Wattles mortgage was a lien prior to the lien of any of these judgments, and, when it became due, it was necessary to make provision for its payment, and this was done in December, 1907, under agreement as follows: The bank conveyed to William Cuthbertson, a son of the plaintiff E. G. Cuthbertson, and he executed two new mortgages to Wattles in the aggregate sum of $20,000, and on the same day deeded the

land back to the bank. It was January 1, 1908, that the five $3,000 notes were given to the bank. The judgments that were rendered against the Cuthbertsons October 3, 1898, aggregating nearly $14,000, were satisfied of record December, 27, 1907, by the bank through W. L. Culbertson, its president, and by W. L. Culbertson individually. This was on the same day that the two mortgages on the land were given to Wattles, and the record shows that satisfaction of the judgments was then entered for the purpose of enabling the Cuthbertsons to make this new loan. We have given the evidence in this case very careful consideration, and we are fully satisfied that all of the judgments in question were taken up by the bank with its own money, under an agreement with the Cuthbertsons, husband and wife, that the bank should do so and hold the land as security therefor. Appellants make many technical objections to a great deal of the evidence offered by appellees, but we think the appellants' admissions in pleading and as witnesses, together with other evidence of appellees which is clearly competent and entitled to weight, establish, without serious question, the liability of the Cuthbertsons, in the first instance, for the sum so advanced by the bank. The assignment of these judgments to the bank, and the satisfaction of the October, 1898, judgments on the very day that the new mortgages to Wattles were executed by William Cuthbertson for the benefit of his parents, is in itself a circumstance of great weight, and, together with the other facts either admitted or proven, is very nearly conclusive on this branch of the case.

As we have before indicated, the one difficult question in this case is whether there was a settlement on the 1st of January, 1908, which included the money paid on these judgments by the bank. It is undisputed that at this time the bank held notes of the Cuthbertsons for the full amount represented by the five $3,000 notes, and that said five notes represented renewals simply of previous notes. And it is practically undisputed that renewals of notes and actual

loans had been made from time to time from 1897. The Cuthbertsons did not attempt to show that any of the money paid by the bank on these judgments had been included in any particular one of the prior notes that had been renewed from time to time, and the evidence of the defendant is practically conclusive that no part of such money could have been included therein. The judgments paid by the bank aggregated over $20,000, and it was conceded by appellants that there was other large indebtedness to the bank during the years covered by their transactions. The contention of the plaintff E. G. Cuthbertson and her husband is that, when the five $3,000 notes were given to W. L. Culbertson for the bank, he was asked whether they included judgments and everything else, and that he answered ''Yes.'' So far as the plaintiffs' evidence goes, that was all there was to the settlement of the amount due on account of the judgments. It is not satisfactory in itself. It is improbable that a claim of over $20,000 would be so lightly disposed of, or so little discussed, and we are united in the conclusion that there was never a settlement of the judgments.

Moreover, if such an agreement as appellants claim had been made, it would be invalid because 2. NEGOTIABLE INSTRUMENTS: consideration. without consideration. *Marshal v. Bullard*, 114 Iowa, 462.

The bank having taken assignments of these judgments and having released them on the record for the purpose only of enabling the appellants to make the Wattles loan, it is manifest that it is entitled to the interest provided for in the judgments, and this was allowed, as we understand the matter.

No issue is raised in the pleadings as to the validity of the receivers' appointment, and hence no such question is before us. An amendment to the abstract shows that an affidavit for attorney's fees was filed by appellees, and hence such fee was properly allowed. The judgment is *affirmed*.